*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0129P (6th Cir.)
File Name: 00a0129p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

William R. Riggs,
  *Petitioner-Appellant,*

v.   No. 98-6051

United States of America,
  *Respondent-Appellee.*



Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
Nos. 97-00702; 94-00099—Edward H. Johnstone,
Senior District Judge.

Argued: March 16, 2000

Decided and Filed: April 11, 2000

Before: NORRIS, MOORE, and COLE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Douglas A. Trant, Knoxville, Tennessee, for
Appellant. Mark L. Miller, ASSISTANT UNITED STATES
ATTORNEY, Louisville, Kentucky, for Appellee.
**ON BRIEF:** Douglas A. Trant, Knoxville, Tennessee, for
Appellant. Mark L. Miller, Terry M. Cushing, ASSISTANT
UNITED STATES ATTORNEYS, Louisville, Kentucky, for
Appellee.

1

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge.  Petitioner-appellant William R. Riggs was convicted after a jury trial of conspiracy to manufacture marijuana, manufacturing marijuana, and possessing marijuana with intent to distribute. He brought a motion under 28 U.S.C. § 2255 challenging his conviction, which was denied by the district court.  Riggs claims that his conviction was invalid for two reasons.  First, Riggs argues that he received ineffective assistance of counsel, because his attorney, a former Assistant United States Attorney, had a conflict of interest.  Second, Riggs claims that the government violated 18 U.S.C. § 201(c)(2), because his conviction was based, in part, on testimony that the government obtained from witnesses in exchange for leniency in their own criminal prosecutions.  Both of these claims are without merit, and we therefore **AFFIRM** the district court's denial of Riggs's motion.

**I.  BACKGROUND**

On June 16, 1995, William Riggs was convicted in the district court for the Western District of Kentucky of conspiring to manufacture, manufacturing, and possessing with intent to distribute over 1,000 plants of marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1).  He was initially sentenced to 188 months of imprisonment and five years of supervised release.  Riggs appealed his conviction and sentence to this court, arguing that the district court incorrectly determined the number of marijuana plants attributable to him.  *See United States v. Riggs*, No. 95-5908, 1996 WL 603666, at **1 (6th Cir. Oct. 21, 1996).  A Sixth Circuit panel affirmed.  *See id.* at **1-2.  Subsequently, Riggs's sentence was reduced to ten years due to an amendment in the United States Sentencing Guidelines that occurred while Riggs's direct appeal was pending.

no hearing is necessary here. Riggs had the opportunity to submit evidentiary materials to the district court. Furthermore, Riggs has not described any additional evidence that he could present at an evidentiary hearing to support his claim. Therefore, we conclude that the record in this case clearly demonstrates that Riggs is not entitled to relief under § 2255.

## C. 18 U.S.C. § 201(c)(2)

Riggs argues that the government has acted illegally in this case by offering reduced sentences to prosecution witnesses in exchange for their testimony against him, thereby violating 18 U.S.C. § 201(c)(2). Section 201(c)(2) prohibits giving, offering, or promising "anything of value" to a person for testifying under oath. Only one circuit court of appeals has ever held that the government's practice of plea bargaining with prosecution witnesses violates 18 U.S.C. § 201(c)(2), *see United States v. Singleton*, 144 F.3d 1343, 1357-58 (10th Cir. 1998), and that decision was vacated and reversed by an en banc court, *see United States v. Singleton*, 165 F.3d 1297, 1298 (10th Cir.), *cert. denied*, --U.S.--, 119 S. Ct. 2371 (1999). Moreover, this circuit has explicitly rejected this argument, holding in *United States v. Ware*, 161 F.3d 414 (6th Cir. 1998), *cert. denied*, 119 S. Ct. 1348 (1999), that 18 U.S.C. § 201(c)(2) does not apply to United States prosecutors who promise leniency in exchange for truthful testimony. Since this panel has no authority to overrule the decision of a prior panel, *see Timmer v. Michigan Dep't of Commerce*, 104 F.3d 833, 839 (6th Cir. 1997), we are compelled to hold that Riggs's claim is without merit.

## III. CONCLUSION

For the foregoing reasons, the district court's order denying Riggs's § 2255 motion is **AFFIRMED**.

On October 31, 1997, Riggs filed the motion in the instant case. Principally, Riggs argues that he received ineffective assistance of counsel at trial because his attorney, a former Assistant United States Attorney, had an actual conflict of interest that prevented him from zealously representing Riggs. Riggs also argues that the government violated 18 U.S.C. § 201(c)(2), which prohibits giving "anything of value" to a person for testifying under oath, when it exchanged sentence reductions for the truthful testimony of prosecution witnesses. The district court denied Riggs's motion in an order entered on July 27, 1998. Riggs filed a timely notice of appeal, the district court having granted a certificate of appealability as to both issues.

## II. ANALYSIS

### A. Standard of Review

A petitioner is entitled to relief under § 2255 only upon a showing of a "'fundamental defect' in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)). This court reviews de novo the district court's denial of a § 2255 motion, but the district court's findings of fact are reviewed only for clear error. *See id.* If the district court has not held an evidentiary hearing, however, this court will affirm only if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see Baker v. United States*, 781 F.2d 85, 92 (6th Cir.), *cert. denied*, 479 U.S. 1017 (1986).

### B. Ineffective Assistance of Counsel

In order to show a violation of the Sixth Amendment right to counsel, a defendant generally must make two showings. First, the defendant must demonstrate that the attorney's performance was deficient, meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, the defendant must prove that the attorney's deficient performance was so prejudicial that it "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Id.* The Supreme Court has slightly modified this rule in the context of alleged conflicts of interest, however. In *Cuyler v. Sullivan*, 446 U.S. 335 (1980), the Court held that, if a defendant can show "an actual conflict of interest [that] adversely affected his lawyer's performance," prejudice may be presumed. *Id.* at 348-50.[1] An "actual conflict" may be demonstrated by pointing to "specific instances in the record" that indicate that the attorney "made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical." *Thomas v. Foltz*, 818 F.2d 476, 481 (6th Cir.) (quotation omitted), *cert. denied*, 484 U.S. 870 (1987).

Riggs argues that his counsel had an actual conflict of interest while representing Riggs. Riggs points to the fact that Cox, a former Assistant United States Attorney (AUSA), was still working as an AUSA at the time of Riggs's investigation and indictment, and that Cox is listed, on the transcript cover, as making an appearance on behalf of the United States during Riggs's grand jury testimony. Riggs further complains that Cox represented the ex-wife of a prosecution witness. Finally, Riggs points out that Cox shared office space with two other attorneys, who represented other co-defendants-turned-prosecution-witnesses:    Keith Kamenish, who

---

[1] Although the *Cuyler* standard was laid out in the context of conflicts of interest arising from multiple representation, this circuit applies the *Cuyler* analysis to all Sixth Amendment conflict-of-interest claims. *See United States v. Mays*, 77 F.3d 906, 908 (6th Cir. 1996). One exception, not applicable here, is in those cases where the trial court was informed by counsel or the defendant of a potential conflict of interest but failed to inquire into that conflict: in such cases, prejudice is presumed and reversal is automatic. *See Holloway v. Arkansas*, 435 U.S. 475, 484-91 (1978). Riggs has made no showing in this case that the trial judge knew of any potential conflict of interest.

operation; therefore, cross-examination on this subject would have been improper. Cox's cross-examination was otherwise sufficient. As regards Barbara Herron, Riggs points to no specific problems with Cox's cross-examination of her, and a review of the transcript reveals none.

Finally, Riggs claims that Cox "opened the door" for admission of Riggs's grand jury testimony by questioning Detective Treadway about Riggs's grand jury appearance. This claim, too, must fail. Although Treadway did state, on re-cross-examination, that he "had a little bit of getting cooperation from Mr. Riggs"[3] with respect to the investigation and the grand jury hearing, J.A. at 324 (Treadway Test.), Cox successfully obtained a cautionary instruction from the district judge with respect to Treadway's statement. Furthermore, Riggs does not claim that any other evidence concerning Riggs's grand jury testimony was admitted at trial; indeed, Cox successfully moved to prevent the government from using that testimony against Riggs at trial. Thus, it is again difficult to see how Cox's performance was adversely affected by the purported conflict of interest.

Riggs has thus come forward with insufficient evidence to meet his burden of showing that Cox had an actual conflict of interest that affected his performance in Riggs's trial.[4] Although in some cases it might be appropriate to remand for an evidentiary hearing in the face of such minimal evidence,

---

[3] It appears that a word was omitted from this phrase in the transcript of Treadway's testimony: from the context, it is clear that Treadway made a statement to the effect that he had some difficulty in obtaining Riggs's cooperation.

[4] To the extent that Riggs intends to suggest that Cox had conflicting loyalties due to the mere fact of his former employment by the government, we reject this suggestion. Indeed, we believe that a former AUSA who is just beginning his career as a defense attorney would likely have an incentive to represent his early clients particularly zealously, so as to win more clients in the future. In addition, Cox's familiarity with the functioning of the United States Attorney's Office would probably inure to the benefit, not the detriment, of his clients in criminal cases.

$25,000 when the police raided a warehouse where the marijuana was grown. Because the parties have not informed the court of the nature of Cox's representation of Driskell's ex-wife, it is difficult to determine whether there would be an actual problem of divided loyalty, as in *McConico v. Alabama*, 919 F.2d 1543 (11th Cir. 1990), in which an attorney represented both a criminal defendant at his murder trial and the murder victim's sister in her claim for the victim's life insurance benefits. In that case, the Court of Appeals for the Eleventh Circuit held that an actual conflict of interest existed, because the two legal matters were related; furthermore, the attorney had an incentive not to cross-examine the victim's sister — his client — on the issue of whether the victim had been the aggressor and the defendant had killed in self-defense, because the sister would not be entitled to the insurance proceeds if the victim had been the aggressor. *See id.* at 1547-48. Additionally, the court noted that actual conflicts are less likely in cases of successive, rather than simultaneous, representation. *See id.*; *see also Takacs v. Engle*, 768 F.2d 122, 125 (6th Cir. 1985) (holding that defense counsel's prior representation of a prosecution witness did not create a conflict where the witness waived attorney-client privilege as to confidential information, and defense counsel therefore had no incentive not to cross-examine the witness vigorously). Since Riggs has not come forward with any specific reasons why Cox would have an incentive to perform lax cross-examination of Driskell, his argument must fail. Furthermore, the transcript indicates that Cox quite effectively crossed and re-crossed Driskell. Cox's failure to cross-examine Driskell on one statement allegedly made to him by Riggs does not demonstrate an actual conflict that adversely affected Cox's performance, particularly since Riggs does not point to any extrinsic evidence with which Driskell's testimony could be impeached.

With respect to Napier, Riggs contends that Cox should have cross-examined him about the number of marijuana plants involved. However, a review of the transcript indicates that Napier was not questioned on direct examination regarding the quantity of marijuana involved in Riggs's

represented Rosco Driskell, and Mark Chandler, who represented Gary Napier.

The government responds by pointing out that, although Cox's name appears on the cover of the grand jury transcript, a review of the transcript itself does not reveal any participation by Cox in the hearing. Cox testified in an affidavit that he was not assigned to the Riggs case in any capacity while working in the United States Attorney's Office; rather, Cox claims that he merely wandered into the grand jury room during Riggs's hearing, and for that reason the court reporter listed his name on the transcript cover. Furthermore, the government points out, Riggs is required to show that this potential conflict adversely affected Cox's representation of Riggs in some way; otherwise, the conflict would remain merely hypothetical and thus insufficient to require reversal of Riggs's conviction. *See, e.g.*, *United States v. Hopkins*, 43 F.3d 1116, 1118-19 (6th Cir.), *cert. denied*, 514 U.S. 1135 (1995); *United States v. Horton*, 845 F.2d 1414, 1418-20 (7th Cir. 1988) (declining to adopt a per se rule that a conflict of interest exists when defense counsel is being considered for a position as a United States Attorney and ruling that the defendant was still required to point to specific evidence showing a conflict). Finally, the government claims that Riggs waived any possible conflict of interest that may have existed, because he was aware that Cox's name appeared on the grand jury transcript and yet agreed to Cox's representation.[2]

Riggs points to several specific acts and omissions by his attorney that purportedly evidence an actual conflict of interest. First, Riggs asserts that Cox never requested a buyer-seller instruction, nor did he discuss the possibility of a buyer-seller defense with Riggs. The government responds by stating that, according to Cox's affidavit, Cox did argue for a buyer-seller instruction; furthermore, the government

---

[2] Our disposition of this case makes it unnecessary for us to decide the waiver issue; therefore, we do not address it in this opinion.

argues, the facts of this case did not support a such an instruction. The district court, in reviewing Riggs's § 2255 motion, agreed with the government that a buyer-seller instruction would not have been warranted in this case. *See, e.g.*, *Bucyrus-Erie Co. v. General Prods. Corp.*, 643 F.2d 413, 420 (6th Cir. 1981) (holding that it is not error for the district court to refuse to give an instruction if there is insufficient evidence in the record to support that instruction). The government also argues that the general conspiracy instruction given by the district judge sufficiently ensured that no conspiracy would be found if the government had proven only a buyer-seller relationship involving Riggs.

The government is correct that Riggs was not entitled to a buyer-seller instruction in this case. There appears to be some support for a buyer-seller instruction in Riggs's own trial testimony; therefore, such an instruction would not have been inappropriate. However, this court held in *United States v. Stephens*, 492 F.2d 1367 (6th Cir.), *cert. denied*, 419 U.S. 874 (1974), *and* 419 U.S. 852 (1974), that a buyer-seller instruction is unnecessary if the district judge has given a complete instruction reciting all the elements of conspiracy and requirements for membership in a conspiracy. *See id.* at 1377. The district judge gave such an instruction in this case. Thus, Riggs was not entitled to a specific buyer-seller instruction. Moreover, even if Cox should have requested a buyer-seller instruction in this case and failed to do so, it is difficult to see how the failure to do so would be a manifestation of Cox's alleged conflict of interest. Riggs has not explained any causal connection between Cox's failure to request the instruction and his prior AUSA position, his representation of Driskell's ex-wife, or his sharing office space with Kamenish and Chandler. Thus, he has not shown "that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 348.

Second, Riggs argues that Cox never informed him that Gary Napier, Riggs's step-son and co-conspirator, would testify against Riggs if Napier pleaded guilty; Riggs appears to suggest that he would not have encouraged Napier to plead

guilty had he been aware of this possible consequence. As the government points out, however, Riggs took the position at sentencing that he was entitled to a sentence reduction for acceptance of responsibility, in part because "he repeatedly urged Mr. Napier to plead guilty and testify against him. . . . which Mr. Napier did on the last day of trial." J.A. at 380 (Sentencing Tr.). Moreover, Riggs has again failed to show any logical connection between Cox's alleged conflict and his attorney's purported omission. Therefore, we hold that Riggs has failed to make the showing required by *Cuyler* with respect to this issue.

Third, Riggs points to one instance in which Cox "argued on behalf of Mr. Napier at the trial." Appellant's Br. at 16. Arguing against granting the government additional time to prepare for trial, Cox stated, "Mr. Napier, and I am speaking on behalf of Mr. Chandler now, has been incarcerated basically since the day or day after the indictment was returned last November." J.A. at 290 (Tr.). This statement does not demonstrate that Cox was simultaneously representing conflicting interests. Indeed, at the time the statement was made, Napier had not yet pleaded guilty; therefore, the two defendants' interests were aligned, as both would have desired to prevent the government from obtaining more time to prepare for trial. *Cf. United States v. Gantt*, 140 F.3d 249, 254 (D.C. Cir.) (holding that the *Cuyler* requirements were not met where the attorney did not learn of a potential conflict between two clients' interests until after the attorney had ceased representing the first client), *cert. denied*, --U.S.--, 119 S. Ct. 361 (1998). Therefore, this argument is without merit.

Fourth, Riggs claims that due to Cox's representation of Driskell's ex-wife and his sharing office space with Driskell's and Napier's lawyers, Cox performed insufficient cross-examination of Driskell, Napier, and Barbara Herron (Driskell's girlfriend, to whom Riggs had sold marijuana). In particular, Riggs states that Cox failed to cross-examine Driskell on his testimony regarding a statement, allegedly made by Riggs to Driskell, to the effect that Riggs lost